IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


FRANKLIN P. FULLEN,                    :

                    Plaintiff          :       Civil Action 2:09-cv-412

      v.                               :       Judge Frost

COMMISSIONER OF SOCIAL                 :       Magistrate Judge Abel
SECURITY,
                                       :
                    Defendant
                                       :

## REPORT AND RECOMMENDATION

      Plaintiff Franklin P. Fullen brings this action under 42 U.S.C. §423 for
review of a final decision of the Commissioner of Social Security denying his
application for disability insurance benefits and supplemental security income.  The
matter is before the Magistrate Judge for a report and recommendation on the
disposition of this matter.


      <u>Summary of Issues</u>.

      Plaintiff Franklin P. Fullen filed an application for SSI and a period of
disability and disability insurance benefits in July 2005 alleging that he had been
disabled since June 30, 2005 by seizures, an enlarged bladder, high blood pressure,
and loss of hearing in his left ear.  The administrative law judge adopted a 2006
state agency physician's residual functional capacity opinion finding that Fullen
retained the ability to lift or carry 25 pounds frequently and 50 pounds occasionally,

and to sit, stand, or walk 6 hours each in an 8 hour period. Plaintiff argues that the ALJ failed to properly consider additional limitations imposed when Fullen later suffered a stroke in 2007 and was diagnosed with degenerative joint disease in 2008.

On appeal, Plaintiff claims that the ALJ improperly determined his residual functional capacity and failed to have a medical expert testify at the hearing, that he improperly failed to evaluate the severity of Plaintiff's condition, that he failed to evaluate conflicting medical opinions according to regulations, and that he failed to develop and apply the testimony of the vocational expert.

**Procedural History**. Plaintiff filed his application for supplemental security income and a period of disability and disability insurance benefits on July 28, 2005. (R. 15.) He claimed that he had become disabled on June 30, 2005 by seizures, an enlarged bladder, high blood pressure, and loss of hearing in his left ear. (R. 60.) The application was denied initially and upon reconsideration. Plaintiff sought a hearing before an administrative law judge. On September 12, 2008, an administrative law judge ("ALJ") held a hearing, at which Plaintiff, represented by counsel, appeared and testified. (R. 216.) On December 3, 2008, the ALJ issued a decision finding that Fullen had not been under a disability since the date of application. (R. 15.) On April 21, 2009, the Appeals Council denied Plaintiff's request for a review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security (R. 4-6.) On June 2, 2009, Plaintiff

filed this timely action.

**Age, Education, and Work Experience**.  Fullen was born on November 9,
1956.  (R. 55.)  He is a high school graduate, and can communicate in English.  (R.
66, 60.)  Fullen was employed as a factory laborer from 1986-1994, a housekeeper in
a nursing home from 1995-2005, and briefly again as a factory laborer in 2005.  (R.
61.)  He last worked in June 2005.  (R. 238.)

**Plaintiff's Testimony**.  The administrative law judge summarized Fullen's
testimony at the hearing as follows:

> The claimant testified that his primary problems involve weakness
> and limitations imposed by his stroke, seizures, hearing loss, and pain
> in his back and hips.  He rates his pain as being on average, an 8 out of
> 10, 10 being the worst.  He related that his pain keeps him from sitting
> or standing for more than 20 to 30 minutes at a time and from walking
> more than four to five blocks.  He is able to lift up to 20 pounds as well
> as cook, grocery shop, do the dishes, mop, vacuum, make his bed, and
> help his wife around the house.  He reports occasionally mowing the
> grass and doing some yard work.  He is able to independently bathe
> and dress himself and attend to his own personal hygiene.  For
> recreation he reports watching television, doing search and find
> puzzles, and "packing in wood" for fires.

(R. 20.)

Plaintiff additionally testified at the hearing that following his 2007 stroke
his ability to do work got worse, and that the left side of his body was partially
numbed.  (R. 242-243.)  He claimed that he had stopped drinking alcohol prior to his
stroke.  (R. 243.)  Fullen described pain along his left side from his left shoulder to
his left hand, and that he could not lift anything for very long because of the pain.

(R. 247, 259.)  He stated also that he had daily light-headedness and a hearing loss in his left ear.  (R. 248.)  Upon questioning by the ALJ, Fullen stated that he now took his medication regularly, but that at the time of his April 2006 seizure he had run out of medication.  (R. 255-256.)  Plaintiff also reported that he continued to have pain from his enlarged bladder condition.  (R. 258.)

### Medical Evidence of Record.

Although the administrative law judge's decision fairly sets forth the relevant medical evidence of record, this Report and Recommendation will summarize that evidence in some detail.

### Physical Impairments.

January 2005 fall.  On January 22, 2005, Fullen was taken by ambulance to Adena Hospital in Greenfield, Ohio after he fell on ice at work and struck the back of his head.  (R. 97.)  He complained of neck, low back, and right hip pain.  Hospital staff noted the smell of alcohol on his breath;  Fullen said he drank alcohol occasionally and that he had been drinking until midnight but had then stopped and gone to bed for work.  However, his alcohol level was .275.  A five-view cervical spine x-ray with swimmer's view revealed no fracture or dislocation, but it did show degenerative joint disease.  A lumbar spine x-ray revealed no fracture or dislocation.  CAT scan revealed no fractures or dislocations.  (R. 99.)  He was diagnosed with a possible concussion, and lumbar, cervical, and right hip strain resulting from his fall.  (R. 100.)  Fullen was advised to refrain from using alcohol

and prescribed Vicoprofen. His record noted that, upon his return to work, he would have "three days of restrictions in which he will be carrying up to 20 pounds. He can stand, walk, squat, push, and pull but decrease bending from the lumbar spine. There will be no hand restrictions." (R. 100.)

A week later, on January 29, 2005, Fullen returned to the hospital emergency room, complaining of low back pain. (R. 104.) He reported having had four beers that day. (R. 104.) His alcohol level was .349. (R. 105.) The attending physician, Dr. Michael M. Alexander, diagnosed Plaintiff with lumbar sprain and strain resulting from his recent fall, alcohol intoxication, and possible lumbar radiculopathy. Plaintiff was prescribed Percocet, as well as Phenergan for nausea and vomiting. (R. 106.) He was advised that he could return to work with the previous restrictions, but that he should return to the emergency department if his symptoms worsened.

History of seizures. On July 12, 2005, Fullen was admitted to the hospital because he had suffered from a seizure and fall at work. (R. 109.) Witnesses reported that he had fallen and struck the left side of his head on a door. He did not have, at the time, any specific motor or sensory complaints or headache, and was awake and alert. (R. 110.) An electrocardiogram had normal reults, though the attending physician noted that "[t]here is likelihood of previous inferior infarct though this electrocardiogram has unchanged significantly from the patient's previous electrocardiogram." (R. 110.) Fullen said he drank 6-12 beers a day, but had stopped drinking two and a half days before. The physician treated his

lacerations and diagnosed Plaintiff as having a seizure possibly caused by alcohol withdrawal. (R. 111.)

On August 10, 2005, Fullen again went to the emergency room after having suffered a seizure. (R. 132.) He did not report headaches, blurriness of vision, numbness, tingling, or weakness. The attending physician diagnosed Plaintiff as suffering from a seizure disorder, most likely related to alcohol abuse. In addition, he identified elevated liver function tests, hyponatremia, hypokalemia, and thrombocytopenia from splenic sequestration, also most likely related to alcohol abuse. (R. 133.)

On April 17, 2006, Fullen again came to the emergency room after suffering a seizure with generalized tonic, clonic activity. He reported having suffered intermittent seizures for almost a week. The seizures were accompanied by a moderate headache, which did not occur with exertion. Plaintiff had stopped taking Lamictal a week before and had not taken his blood pressure medications for a month. (R. 177.) He was diagnosed with seizures disorder and hypertension. (R. 178.) The treating physician had a long conversation with Fullen "regarding the importance of compliance."

History of bladder problems. On August 16, 2005, Plaintiff was examined at the Grant Hospital emergency room by Dr. Franscisco Garabis, a family practitioner, for evaluation of an enlarged bladder condition. (R. 148.) His impressions were obstructive uropathy and seizure disorder. The plan included a urology consult and treatment for seizure disorder and alcohol abuse. (R. 148.) Dr.

6

Garabis had requested CT and ultrasound scans of Plaintiff's abdomen and pelvis, which found massive dilatation of the urinary bladder with mild hydronephrosis rightward and moderate ureterectasis leftward and fatty infiltration of the liver. (R. 143-144.)

On August 24, 2005, Dr. Garabis examined Plaintiff in a hospital evaluation, and diagnosed him with nephrogenic diabetes insipidus, seizure disorder, and alcohol abuse. (R. 146.) Upon admission, it was noted that Plaintiff's blood pressure was "not very well controlled", but that it had responded well to medications. He was advised to take medication and follow up with his family physician. (R. 146.) There is no evidence in the record that he did.

After this second examination, Dr. Garabis completed an Ohio Department of Job and Family Services basic medical form. In it, he diagnosed Plaintiff with "severe" hydronephrosis and an enlarged bladder. (R. 166.) Dr. Garabis opined that, given these medical conditions, Plaintiff could stand or walk for two hours per day, without interruption, that he could sit for four hours, sitting without interruption for three hours, that he could lift or carry 6-10 pounds frequently, and less than five pounds occasionally. He found no limitations in other vocational movements. (R. 167.) Dr. Garabis left blank the section asking for the observations and medical evidence which led to his capacity findings, but checked a box stating that Plaintiff was "unemployable". (R. 167.)

An August 12, 2008 CT scan of the pelvis ordered by Dr. Damodar Poudel was interpreted to be suggestive of a chronic bladder outlet obstruction. (R. 191.)

On September 3, 2008, Fullen consulted with Dr. E. Magbag, M.D., a urologist. Dr. Magbag's notes are only semi-legible, but show that Plaintiff had been suffering from slow streams, although he had reported no dribbling or difficulty emptying his bladder. (R. 196.) Fullen had apparently reported no bladder pain, though he mentioned weakness and numbness on his left side. The form indicates Fullen did not drink alcohol. (R. 197.) Dr. Magbag's physical examination notes list no abnormalities. (R. 198.)

Stroke. On November 26, 2007, Fullen saw Dr. Michael Jones, D.O., for a neurologic consultation. (R. 180.) He reported having suffered a stroke in mid-October of that year, but did not seek immediate medical attention because he had an office visit scheduled for a few days later. Plaintiff also reported his history of infrequent seizures dating from 2005. He complained of left-sided paresthesias, tenderness in his left face, arm, and leg, weakness in his left side, and speech problems. (R. 180.) Dr. Jones found that Plaintiff was alert and oriented to person, place, and time, followed commands, and answered questions appropriately. There was no agnosia, aphasia, or aphraxia identified, and judgment and abstract thinking were apparently intact. He said he did not drink alcohol. Dr. Jones identified a right Horner's syndrome, slightly decreased ("4/5") motor strength in his left upper and lower extremities, and dysesthesia and hyperesthesia of the left face, arm, and leg. (R. 181.) Dr. Jones reviewed an MRI scan of the brain from October 2007, which revealed a subacute infarct in the right cerebellar hemisphere, as well as a small bit of extension into the right lateral medulla. (R. 181.)

Dr. Jones' impressions were:

1.  Right cerebellar hemispheric infarction with extension into the right lateral medulla.  This gentleman's clinical presentation is indeed consistent with the lateral medullary syndrome of Wallenberg.  This is very likely caused by compromise of the right vertebral or perhaps right RICA artery.  His risk factors include cigarette smoking and hypertension.  Contralateral weakness and dysesthesias are common in this entity.

2.  He does give a history of seizures.  However, it does not seem that this complaint has been worked up as of yet and further assessment is necessary to determine whether or not he truly has epilepsy.

(R. 182.)  Dr. Jones prescribed a daily aspirin, Lamictal, 25 mg. p.r.n., and Neurontin 300 mg ti.d.  He advised Fullen that it was important that he stop smoking tobacco.  He was to make a followup appointment with Dr. Jones.

Back and left side treatment.  Included in the record are office notes from Plaintiff's treatment by Dr. Damodar Poudel at Family Heathcare, Inc. on June 13, June 30 and July 28, 2008.  On June 13, Fullen came for an initial consultation. On examination, his lungs were clear to ausculation. Muscle tone, power and reflexes were normal. (R. 189.) He strongly urged Fullen to quit smoking. (R. 190.) On June 30, Fullen complained of back pain mainly on the right side lower back, sometimes radiating to the back of the thigh.  (R. 188.)  He reported smoking one pack per day. A back examination was normal. There were no specific tender points. Straight leg raising was negative. Muscle tone, power and reflexes were normal. (R. 188.)  Dr. Poudel's impressions were low back pain, hyperlipidemia, and tobacco abuse.  He advised Fullen to take Naproxen 250 mg. three times daily, to try back stretching exercises, to quit smoking, and to increase use of Simvastin to 40 mgs. per day.

9

On July 21, 2008, Dr. Poudel obtained a whole body scan and bilateral hip x-rays of Plaintiff. (R. 193.) The whole body scan showed "[m]inor degenerative uptake . . . at the level of the shoulders, knees and ankles." There was no other "pathologic uptake." (R. 192.) The hip x-rays revealed evidence of joint space narrowing in keeping with osteoarthritis of both hips. There was a 2 cm by 1.4 cm sclerotic focus in the left iliac bone, most likely representing a bone island. On the same day, Plaintiff received AP and lateral x-rays of his lumbar spine. These revealed a mild degree of disk space narrowing at the L5-S1 level, and evidence of anterior osteophyte formation at the L1-L2, L2-L3, and L3-L4 levels. There was also evidence of facet joint osteoarthritis, but no evidence of spondylolysis or spondylolisthesis. (R. 194.) A further x-ray of Plaintiff's thoracic spine demonstrated evidence of disk space narrowing at multiple levels with anterior osteophyte formation, but no evidence of vertebral compression. (R. 195.) A CT scan of the left iliac showed a benign sclerotic entity. (R. 191.)

On July 28, 2008, Dr. Poudel conducted a follow-up examination on Plaintiff. Plaintiff complained of chronic left side pain, including widespread weakness and numbness. (R. 186.) He also reported back pain, mainly on the lower back and hip area. Fullen said that he had previously taken Percocet "which was helping a little bit with the pain," but now he was on Naproxen, which was ineffective. He also said he could not tolerate the Naproxen. Plaintiff smoked one pack of cigarettes per day, and had not undergone physical therapy. He was on medication for hyperlipidemia and high blood pressure.

Dr. Poudel's assessment was that the Plaintiff had extensive degenerative joint disease of the back and hip, chronic left sided body pain, hyperlipidemia, and tobacco abuse. He prescribed Percocet for pain, scheduled Plaintiff for a bone scan for the sclerotic lesion on his left iliac bone area, and instructed him to continue Flexeril and Neurontin for his chronic pain. (R. 186.) Dr. Poudel also strongly encouraged Plaintiff to stop smoking and to try exercise. (R. 187.) A July 30, 2008 full body scan showed "minor degenerative uptake" at the shoulders, knees and aknles. No other bony pathology was observed. (R. 192.)

State agency physician. On February 17, 2006, Dr. Thomas Vogel, a state agency physician, completed a physical residual functional capacity assessment based upon Plaintiff's record. (R. 169-73.) Dr. Vogel opined that Plaintiff could occasionally lift fifty pounds, could frequently lift twenty-five pounds, could stand or walk for six hours in a work day, and sit for six hours. (R. 170.) His ability to push or pull was unlimited, though Plaintiff should never climb a ladder or scaffold and should avoid exposure to hazards. (R. 170-173.) Dr. Vogel found that Plaintiff's reported symptoms were attributable to a medically determinable impairment, and were consistent with the total medical and nonmedical evidence, though their severity was disproportionate to that expected for Plaintiff's impairments. (R. 174.) He summarized:

> 48 year old laborer who alleges inability to work on basis of seizures and back pain
>
> The seizures may entirely be related to the consumption of alcohol. There is no reason to think they cannot be controlled.

Back pain is not associated with neuromusculoskeletal deficiencies, or suggestion of herniated disc.

Obstructive uropathy manageable by catheter and other definitive measures.

(R. 171.)

## Administrative Law Judge's Findings.

1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2009 (See, Exhibits Section D).

2.     Based on the claimant's earnings record (Exhibit Section D) and his testimony at the hearing, the claimant has not engaged in substantial gainful activity since June 30, 2005, his alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.     Based on the objective medical evidence, the claimant has the following severe impairments: status-post cerebral vascular accident on October 12, 2007, hypertension, a history of alcohol abuse, and a partial hearing loss in his left ear (20 CFR 404.1521 et seq. and 416 et seq.).

. . . In October 2007, the claimant suffered a stroke due to hypertension that was poorly controlled because the claimant was not compliant with taking his medication for this condition. As a result of the claimant's stroke he has decreased motor strength in both his upper and lower extremity on his right side as well as dysethesia and hyperesthesia. The motor strength and sensation in his left extremities are normal. The range of motion in both his right and left upper extremities is normal as is the claimant's gait and reflexes (Exhibits 12F, 10F).

In addition his impairments related to his hearing, hypertension, and his cerebral vascular accident, the claimant also has been diagnosed with osteoarthritis, degenerative joint disease, an enlarged bladder, a history of alcohol abuse, and an alcohol-related seizure disorder. These conditions are found to be non-severe as the objective medical evidence fails to establish these latter impairments are of sufficient limitations and/or that they caused significant limitations that continually existed for a period lasting 12 months or more.

12

X-rays of the claimant's hips and spine have shown the presence of mild joint space narrowing in both hips consistent with osteoarthritis. There is no evidence of bony destruction, floating bodies, or decreased range of motion or an inability to ambulate effectively as a result of this osteoarthritis. There is mild narrowing at the L5-S1, some mild joint facet osteoarthritis, and osteophytes present at multiple levels (Exhibit 13F) but no evidence of disc bulges, nerve impingement, compression, stenosis, spondylosis, or disc herniation. The claimant's gait has been described as normal. His straight leg raising has been also described as negative (Exhibits 13F, 12F, 4F, 2F). His muscle strength, tone, range of motion, and reflexes as they relate to his spine and osteoarthritis and degenerative joint disease have all been consistently reported as normal (Exhibit 2F).

. . .

The claimant has been treated for seizures that have been determined to be due to alcohol withdrawal syndrome. . . . The evidence of record documents a total of three seizures: one in July and August of 2005, and another in April 2006 (Exhibits 9F, 4F, 3F, 2F). The claimant's seizures ceased around the time the claimant represented that he had stopped drinking alcohol altogether and no longer used alcohol.

4.      Based on the medical evidence of record, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to lift and/or carry 25 pounds frequently and 50 pounds occasionally and to sit, stand or walk 6 hours each in an 8 hour period.  He cannot climb ladders, ropes, or scaffolds or work around hazardous machinery.

. . .

In this case, the claimant's subject complaints are neither supported by nor consistent with the objective medical evidence. . . .

The claimant in this case does have an underlying medically determinable impairment that could reasonably cause some of the symptomatology alleged. However, a careful review of the record does not disclose sufficient objective

medical evidence to substantiate the severity of the symptoms and degree of functional limitations alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in disabling symptoms of such a severity or frequency as to preclude the range of work described in these findings.

The claimant testified that his primary problems involve weakness and limitations imposed by his stroke, seizures, hearing loss, and pain in his back and hips. He rates his pain as being on average, an 8 out of 10, 10 being the worst. He related that his pain keeps him from sitting or standing for more than 20 to 30 minutes at a time and from walking more than four to five blocks. He is able to lift up to 20 pounds as well as cook, grocery shop, do the dishes, mop, vacuum, make his bed, and help his wife around the house. He reports occasionally mowing the grass and doing some yard work. He is able to independently bathe and dress himself and attend to his own personal hygiene. For recreation he reports watching television, doing search and find puzzles, and "packing in wood" for fires.

The objective medical findings do not support the claimant's claims of severe disabling pain and other disabling symptomatology.

> X-rays of the claimant's hip and spine show only mild narrowing of joint space and in the case of the claimant's spine, mild osteophytes. There is no evidence of bony destruction, disc bulges, spondylotic spurring, stenosis, compressive disc disease, herniation, or neurocompression (Exhibit 13F). An EEG was within normal limits (Exhibit 4F). . . . By history, an October 2007, post-stroke MRI scan of his brain did reveal a sub acute stroke in the right cerebellar hemisphere (Exhibit 10F) that was consistent with and supported by clinical findings of mild weakness on the right side. There is no evidence of acute hearing loss . . . . The claimant's hypertension has been very responsive to medication and is controlled with medication. His treatment records indicate problems with uncontrolled hypertension that are related to the claimant's failure to take his medication as prescribed (Exhibits 12F, 5F).

> Clinically, the claimant's examining and treating physicians have reported since the claimant's stroke in October 2007 that he has decreased motor strength (4/5) in both his upper and lower extremity on the right side as well as dyesthesia and hyperesthesia. He has slurred speech but is able to communicate effectively. His motor strength and sensation in his left extremities is normal as is the

claimant's gait and reflexes. No edema, muscle atrophy, Hoffman, Tromner, or Babinski signs were identified (Exhibits 13F, 12F, 10F). . . . Straight leg raises have consistently been reported negative both sitting and supine. His gait is normal. His station, coordination, and cerebellar function have been unremarkable. . . .

These clinical findings are neither indicative nor supportive of the type of severe disabling pain and other disabling symptomatology the claimant alleges.

Since his alleged onset date of February 4, 2004, the claimant has not pursued any form of pain management and/or physical therapy even though it has been recommended (Exhibit 12F). While the claimant has alleged continued problems with seizures, he has not seen a specialist for this condition. He did not see a neurologist until after he had his stroke in October 2007 (Exhibit 10F). The record evidences little routine follow-up for the conditions the claimant alleges impose severe pain and functional limitations. Given the degree of severe pain and disabling limitations the claimant alleges one would expect to see greater evidence of regular, routine visits and medical management of the impairments such as physical therapy, pain management, and/or surgical intervention (actual or recommended) than what the record indicates.

[His] daily activities contradict the claimant's own statements as to his physical limitations and are not credibly restricted to the extent one would expect of an individual alleging the type of severe, disabling pain and symptomatology the claimant alleges.

. . .

The opinion expressed by Dr. Garabis (Exhibit 6F) in regards to the claimant's degree of functional limitation and employability is accorded no weight because Dr. Garabis did not reference specific medical findings within the record and/or explain how those medical findings supported his opinion as to the severity of the claimant's impairments and the limitations they imposed on the claimant's functional capacity to work. Furthermore, the final responsibility for determining whether a claimant is "disabled" or "unable to work" is an area reserved to the Commissioner [20 C.F.R. § 404.1527(e) and § 416.927(e)].

The opinion expressed by the State agency (Exhibit 8F) in regards to the claimant's impairments and the degree of disability they impose have been considered and are found to be consistent with the objective medical evidence

of record. Accordingly, the State agency medical opinions are accepted and adopted.

Based on the foregoing discussion of the medical evidence and the testimony and statements of the claimant, the claimant is found to have the residual functional capacity to perform to lift and/or carry 25 pounds occasionally and to be able to sit, stand, or walk 6 hours each in an 8 hour period. He cannot climb ladders, ropes, or scaffolds or work around hazardous machinery.

6.      Based on his residual functional capacity, the claimant is capable of performing past relevant work as a nursing home housekeeper. That work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. .

7.      The claimant has not been under a disability, as defined in the Social Security Act, since June 30, 2005 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. ..." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It means "'more than a scintilla.'" *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take

into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments**.   Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the ALJ improperly determined Plaintiff's residual functional capacity and failed to have a medical expert at the hearing to provide testimony, because the ALJ improperly evaluated the Plaintiff's alleged disabling symptoms under the standard in *Duncan v. Sec. of Health & Human Servs.*, 802 F.2d 847 (6th Cir. 1986), because the ALJ failed to evaluate conflicting medical opinions according to the regulations, and because the ALJ failed to develop and apply the testimony of the vocational expert.

**Analysis**.

The ALJ, generally speaking, found the February 2006 opinions of Dr. Vogel, the state agency physician, to be consistent with the objective medical evidence of record and accepted them.  (R. 22.)  He expressly rejected Dr. Garabis' August 2005 functional capacity evaluation, giving it no weight because Dr. Garabis had failed to refer to specific medical findings within the record and explain how they supported his opinion.  (R. 22.)  The ALJ concluded that "the evidence of record strongly suggests that [Plaintiff's] seizures are alcohol-related and occur only when the claimant stops drinking alcohol after binging."  (R. 18.)  With respect to Plaintiff's

bladder condition, the ALJ found that:

> Later treatment records do not reflect significant complications from this bladder condition. . . . No treatment or presence of significant pain or discomfort has been noted. There is no evidence of nephropathy, kidney failure, renal disease, or significant bladder or urethra dysfunction that would necessitate special accommodations in the work place due to leakage or frequent urge or need for voiding. Indeed, treating physicians have repeatedly commented that the claimant has denied any bladder problems.

(R. 18.) In addition, the ALJ addressed Plaintiff's stroke, stating that while it had caused some slurred speech and decreased sensation and weakness, "there is no evidence of sensory or motor aphasia such that he is unable to engage in effective speech or communication or of significant and persistent disorganization of motor function." (R. 19.) He did not directly address Dr. Poudel's opinion.

Supportability of Garabis and Vogel opinions

Dr. Garabis' ODJFS Basic Medical form assessment presented a restrictive view of Plaintiff's vocational abilities. While it did not restrict specific movements, it severely curtailed his ability to lift and carry and moderately limited his ability to sit and stand. As noted above, the ALJ gave this opinion no weight, because Dr. Garabis "did not reference specific medical findings within the record and/or explain how those medical findings supported his opinion as to the severity of the claimant's impairments and the limitations they imposed on the claimant's functional capacity to work." (R. 22.) Plaintiff, in his third assignment of error, claims that the ALJ erred in giving more weight to the opinion of the state agency physician, Dr. Vogel, than to that of Dr. Garabis. He argues that, to the extent that Dr. Garabis' opinion

18

lacked specific reference to the record (and thus supportability), Dr. Vogel's opinion suffered from the same deficiency. However, Dr. Garabis was at least a treating physician, unlike Dr. Vogel.

Plaintiff implies that there were two errors here: first, in failing to give weight to the opinion of Dr. Garabis, and second, in giving weight to that of Dr. Vogel. In his reply brief, however, Plaintiff argues instead that the first error was the ALJ's failure to give good reasons for the weight he gave Dr. Garabis. In either case, Plaintiff's objection is not well taken. An ALJ is not obligated simply to defer to treating physicians; he has the discretion to make a factual determination as to whether their opinions are consistent with the overall evidence of record. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007), citing 20 C.F.R. §404.1527(d)(2). In August 2005, Dr. Garabis treated Plaintiff three times in an eight-day period. After the second visit, he filled out the form medical evaluation in which he presented a very restrictive opinion of Plaintiff's vocational capabilities. While Dr. Garabis did list his diagnoses, he offered no specific reasons as to why Plaintiff's hydronephrosis (which the CT scans Dr. Garabis ordered had shown was "mild") or enlarged bladder would so severely diminish Plaintiff's ability to sit or stand. The ALJ did not abuse his discretion in giving little weight to Dr. Garabis' functional limitation opinion, and did not fail to give good reasons for doing so.

Reliance upon Vogel opinion

In addition to Plaintiff's objection to the ALJ's adoption of Dr. Vogel's opinion on the basis of supportability, in Plaintiff's first assignment of error he argues that

Dr. Vogel's opinion was without the benefit of the complete medical record:

> Thomas Vogel, M.D., reviewed the record February 17, 2006, some eighteen months prior to Plaintiff's cerebral vascular accident.
>
> The medical record contains significant evidence of further impairment and limitations that the State agency reviewer did not have available to him at the time of his assessment. Plaintiff suffered a stroke in October 2007 that caused, most likely permanent, functional limitations shown on examination. [...] Dr. Vogel's opinion was without the benefit of the complete medical record and represents a level of capability that is not supported longitudinally. Dr. Vogel's opinion upon which the ALJ based his decision is no longer valid.

(Doc. 10 at 7.) Plaintiff argues that the ALJ improperly determined Fullen's residual functional capacity when he relied upon Dr. Vogel's obsolete opinion, and that he should have had a medical expert at the hearing to testify as to how his subsequent stroke would have affected Dr. Vogel's opinion. Defendant argues in response that it was within the ALJ's discretion to decide that medical expert testimony was not necessary to determine Fullen's RFC, and that there is no record evidence that his stroke caused functional limitations beyond those the ALJ identified.

<u>When medical advisor required</u>. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the

requirements of any impairment listed in appendix 1 to this sub-part." 20 C.F.R. §

404,1527(f)(2)(iii). The Commissioner's operations manual indicates that it is

within the administrative law judge's discretion whether to seek the assistance of a

medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an

ALJ may obtain ME opinion is to gain information which will help him or her

evaluate the medical evidence in a case, and determine whether the claimant is

disabled or blind." *Id.* The operations manual indicates that an administrative law

judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
- the ALJ is assessing a claimant's failure to follow prescribed treatment;
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;
- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the nature of an impairment and identify any medically contraindicated activities; or

- the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision. *Nebra A. Simpson v. Commissioner of Social Security,* 2009 WL 2628355 (6th Cir. August 27, 2009)(unreported) at *8. An administrative law judge abuses her discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989).

Here the administrative law judge did not abuse his discretion. His decision included a thorough recitation of the evidence and provided a thorough, well-documented findings supporting the conclusion.

The medical record did not require the administrative law judge to find that either the residuals of Fullen's stroke or his complaints of generalized pain rendered him disabled. No treator has said that the residuals of Plaintiff's stroke prevent him from working. And there are no x-ray, CT-scan, MRI or clinical findings that substantiate Fullen's testimony that his subjective symptoms prevent him from working. A November 2007 examination found only that Plaintiff's left-side motor strength was slightly impaired. (R. 181-182.) In July 2008, Dr. Poudel July 28, 2008 examination said that Fullen had degenerative joint disease of the back and hip, as well as a benign sclerotic lesion in his left iliac bone area. But the

x-ray and body scan findings as well as Dr. Poudel's clinical findings were, as the administrative law judge found, quite modest and did not preclude light work.

Credibility Determinations: Controlling Law. Finally, Plaintiff argues that the administrative law judge did not make a credibility determination about his disabling pain that was consistent with the Sixth Circuit's decision in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).

Pain is an elusive phenomenon. Ultimately, no one can say with certainty whether another person's subjectively disabling pain precludes all substantial gainful employment. The Social Security Act requires that the claimant establish that he is disabled. Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity <u>by reason of any medically determinable or mental impairment</u> which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a

23

disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide:

(a) *General.*  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work.  We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.  However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements

about how your symptoms affect you. (Section 404.1527
explains how we consider opinions of your treating source
and other medical opinions on the existence and severity
of your symptoms, such as pain.) We will then determine
the extent to which your alleged functional limitations
and restrictions due to pain or other symptoms can
reasonably be accepted as consistent with the medical
signs and laboratory findings and other evidence to decide
how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a).

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853

(6th Cir. 1986) the Sixth Circuit established the following test for evaluating

complaints of disabling pain. First, the Court must determine "whether there is

objective medical evidence of an underlying medical condition." If so, the Court

must then

examine: (1) whether objective medical evidence confirms
the severity of the alleged pain arising from the condition;
or (2) whether the objectively established medical
condition is of such a severity that it can reasonably be
expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective

complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human*

*Services*, 823 F.2d 918, 920 (6th Cir. 1987).

<u>Credibility Determination: Discussion</u>. Here the administrative law judge

carefully considered Plaintiff's credibility, reviewed the medical records to

determine whether there were x-ray, test and clinical findings supporting his

allegations of disabling pain, and concluded that there were not. Because there was

substantial evidence supporting that decision, it is consistent with 42 U.S.C. §§

25

423(d)(1)(A) and 423(d)(5)(A), 20 C.F.R. §404.1529(a), and *Duncan*.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that **JUDGMENT** be entered for defendant.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge